2012 CO 17

The REGENTS OF the UNIVERSITY OF COLORADO; Stephen Ludwig, in his official capacity as Regent; Joseph Neguse, in his official capacity as Regent; Monisha Merchant, in her official capacity as Regent; Michael Carrigan, in his official capacity as Regent; Tom Lucero, in his official capacity as Regent; Steve Bosley, in his official capacity as Regent; Kyle Hybl, in his official capacity as Regent; James Geddes, in his official capacity as Regent; Tilman Bishop, in his official capacity as Regent; Jim Spice, in his official capacity as Chief of Campus Police, University of Colorado at Colorado Springs; Pam Shockley–Zalabak, in her official capacity as Chancellor, University of Colorado at Colorado Springs; Doug Abraham, in his official capacity as Chief of Campus Police, University of Colorado Denver; and M. Roy Wilson, in his official capacity as Chancellor, University of Colorado Denver, Petitioners

v.

STUDENTS FOR CONCEALED CARRY ON CAMPUS, LLC, a Texas limited liability company; Martha Altman; Eric Mote; and John Davis, Respondents.

No. 10SC344.

Supreme Court of Colorado, En Banc.

March 5, 2012.

Office of University Counsel, Patrick T. O'Rourke, Margaret Wilensky, Denver, Colorado, Attorneys for Petitioners.

Mountain States Legal Foundation, James M. Manley, Lakewood, Colorado, Attorneys for Respondents.

Heizer Paul Grueskin LLP, Edward T. Ramey, Denver, Colorado, Attorneys for Amici Curiae The Brady Center to Prevent Gun Violence, Colorado Ceasefire Capitol Fund, and the Greater Denver Million Mom March.

Hale Westfall, LLP, Richard A. Westfall, Peter J. Krumholz, Denver, Colorado, Attorneys for Amicus Curiae National Rifle Association.

The Terry Ryan Law Firm, LLC, Terrance L. Ryan, Fort Collins, Colorado, Attorneys for Amicus Curiae Rocky Mountain Gun Owners.

David B. Kopel, Tyler Martinez, Golden, Colorado, Attorneys for Amici Curiae The County Sheriffs of Colorado and the Independence Institute.

Highlands Ranch Law Center, P.C., Anne Whalen Gill, Highlands Ranch, Colorado, Second Amendment Foundation, Mikolaj T. Tempski, pro hac vice, Bellevue, Washington, Gura & Possessky, P.L.L.C., Alan Gura, pro hac vice, Alexandria, Virginia, Attorneys for Amicus Curiae Second Amendment Foundation.

Justice EID delivered the Opinion of the Court.

¶ 1 The Students for Concealed Carry on Campus, LLC, along with Martha Altman, Eric Mote, and John Davis (collectively, the "Students"), filed a complaint against the University of Colorado's Board of Regents (the "Board of Regents" or "Board") and others alleging that the Board's Weapons Control Policy 14–I ("the Policy")—which prohibits the carrying of handguns on campus by all persons but certified law enforcement personnel—violates the Colorado Concealed Carry Act ("CCA"), §§ 18–12–201 to – 216, C.R.S. (2011), and the Colorado Constitution's right to bear arms, Colo. Const. art. II, § 13. The Board of Regents filed a motion to dismiss under C.R.C.P. 12(b)(5), which the district court granted. The Students appealed, and the court of appeals reversed.

¶ 2 The court of appeals held that the Students stated a claim for relief because the CCA expressly applies to "all areas of the state." The court further concluded that the Students had stated a claim for relief under article II, section 13 of the Colorado Constitution, which affords individuals the right to bear arms in self-defense. *See Students for Concealed Carry on Campus, LLC v. Regents of the U. of Colo.,* —— P.3d ——, ——, ——, 2010 WL 1492308 (Colo.App.2010).

¶ 3 We granted certiorari and now affirm. We hold that the CCA's comprehensive statewide purpose, broad language, and narrow exclusions show that the General Assembly intended to divest the Board of Regents of its authority to regulate concealed handgun possession on campus. Accordingly, we agree with the court of appeals that, by alleging the Policy violates the CCA, the Students have stated a claim for relief. Because we affirm on statutory grounds, we do not consider the Students' constitutional claim.

I.

¶ 4 The Board of Regents adopted the Policy on March 17, 1994. The Policy prohibits "the possession of firearms ... on or within any University of Colorado campus, leased building, other area under the jurisdiction of the local campus police department or areas where such possession interferes with the learning and working environment." The only exceptions are for "peace officers or for others who have written permission from the Chief of Police for those campuses which have such an officer or from the Chancellor after consultation with the Chief of Police." Any individual violating the Policy will be banned from campus; if that person is a student, the "minimum disciplinary sanction shall be expulsion." In justifying the Policy, the Board of Regents stated that firearm possession is "inconsistent with the academic mission of the [University of Colorado] and, in fact, undermines it"; "threatens the tranquility of the educational environment in an intimidating way"; and "contributes in an offensive manner to an unacceptable climate of violence."

¶5 In 2003, citing "widespread inconsistenc[ies] among jurisdictions," the General Assembly enacted the CCA to "occupy the field of regulation of the bearing of concealed handguns" and to "provide statewide uniform standards for issuing permits to carry concealed handguns for self-defense." § 18–12–201(1)(e), (2)(b). Under the CCA, when a permit is issued, the permittee is authorized "to carry a concealed handgun in all areas of the state, except as specifically limited" by the statute. § 18–12–214(1)(a). One specific limitation prohibits permittees from "carry[ing] a concealed handgun onto the real property, or into any improvements erected thereon, of a public elementary, middle, junior high, or high school." § 18–12–214(3). Section 18–12–214(3) does not include an exception for the University of Colorado campuses. A "local government" is prohibited from "adopt[ing] or enforc[ing] an ordinance or resolution that would conflict with any provision of [the CCA]." § 18–12–214(1).

¶6 On December 11, 2008, the Students filed a complaint in El Paso County District Court, alleging that the Policy violated the CCA and the Colorado Constitution's right to bear arms.[1] The complaint asserted that Martha Altman, Eric Mote, and John Davis wanted to possess a handgun when traveling to, from, through, or on the campuses of the University of Colorado for self-defense. Altman contacted the Chief of Police at the University of Colorado Denver requesting permission to carry a concealed weapon on campus, while Mote and Davis contacted the chancellor of the University of Colorado at Colorado Springs requesting the same. Each asserted that they held a valid concealed-carry permit under the CCA. All three requests were denied, with the officials citing to the Policy.

¶7 The Board of Regents filed a motion to dismiss arguing that the Students had failed to state a claim for relief, which the district court granted. The court concluded that because the CCA prohibits only "local governments" from adopting or enforcing laws contrary to the CCA, and the Board is not a "local government," the Board was not divested of authority to regulate concealed handgun possession on campus.

¶8 In addition, the district court found that the right to bear arms is not a "fundamental right" and "can instead be highly restricted by the state's valid exercise of its police power." Consequently, the right to bear arms is "not subject to strict constitutional scrutiny," but is only subject to the "rational basis test"—an inquiry that the Policy "easily pass[es]." The Students appealed, and the court of appeals reversed.

¶9 On the statutory claim, the court of appeals focused on the CCA's plain language and its desire for statewide uniform standards to conclude that "all areas of the state" includes university campuses. —— P.3d ——, —— – ——. Accordingly, the court held that the Students' allegations, "when accepted as true, state a claim for relief that the [P]olicy violates the CCA." *Id.* at ——. On the constitutional claim, the court noted that the Students had limited their claim's scope "to the ability to possess a firearm in a motor vehicle when traveling on or through a University of Colorado campus." *Id.* On this question, the court concluded that, rather than the rational basis test, a "reasonable exercise" test applied. *Id.* at ——. Thus the Students' allegations did state a "claim for relief concerning the ability to carry a firearm in a motor vehicle when travelling on or through a University of Colorado campus." *Id.*

¶10 We granted certiorari[2] and now affirm. We hold that the CCA's comprehen-

---

1. In addition to naming the Board of Regents as a defendant, the complaint named, in their official capacities, the individual regents, the chief of campus police of the University of Colorado at Colorado Springs, the chancellor of the University of Colorado at Colorado Springs, the chief of campus police of the University of Colorado Denver, and the chancellor of the University of Colorado Denver.

2. We granted certiorari on the following issues:

1. Whether the General Assembly intended the Concealed Carry Act to divest the Board of Regents of its constitutional and statutory authority to enact safety and welfare measures for the University of Colorado's campuses.
2. Whether a constitutional challenge to a statute or ordinance regulating the right to bear arms is governed by the deferential "rational basis" standard of review or a

sive statewide purpose, broad language, and narrow exclusions show that the General Assembly intended to divest the Board of Regents of its authority to regulate concealed handgun possession on campus. Accordingly, we agree with the court of appeals that, by alleging the Policy violates the CCA, the Students have stated a claim for relief. Because we affirm on statutory grounds, we do not consider the Students' constitutional claim.

## II.

¶ 11 We review a trial court's order granting a motion to dismiss de novo; we accept all factual averments as true and view the allegations in the light most favorable to the plaintiff. *Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 386 (Colo.2001). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that no set of facts can prove that the plaintiff is entitled to relief. *Id.* at 385–86.

¶ 12 We turn first to the statutory question of whether the CCA divests the Board of its authority to regulate concealed handgun possession on campus. In enacting the CCA, the General Assembly found that jurisdictions were inconsistent in issuing concealed-carry permits and in identifying "areas of the state where it is lawful to carry concealed handguns." § 18–12–201(1)(a), C.R.S. (2011). Instead, the General Assembly found, the criteria and procedures for lawfully carrying a concealed handgun "should be consistent throughout the state to ensure the consistent implementation of state law." § 18–12–201(1)(d). Moreover, it was "necessary that the state occupy the field of regulation of the bearing of concealed handguns since the issuance of a concealed handgun permit is based on a person's constitutional right of self-protection and there is a prevailing state interest in ensuring that no citizen is arbitrarily denied a concealed handgun permit and in ensuring that the laws

controlling the use of the permit are consistent throughout the state." § 18–12–201(1)(e).

¶ 13 Based on its findings, the General Assembly concluded that the "permitting and carrying of concealed handguns is a matter of statewide concern," and, therefore, "[i]t is necessary to provide statewide uniform standards for issuing permits to carry concealed handguns for self-defense." § 18–12–201(2)(a)–(b), C.R.S. (2011). Accordingly, the General Assembly enacted the comprehensive scheme known as the CCA. *See* §§ 18–12–201 to –216.

¶ 14 To bring about its "statewide uniform standards," the General Assembly declared that "[a] permit to carry a concealed handgun authorizes the permittee to carry a concealed handgun in all areas of the state, except as specifically limited in [section 18–12–214]." § 18–12–214; *see also* § 18–12–204 ("A permit issued pursuant to [the CCA] ... is effective in all areas of the state, except as otherwise provided in section 18–12–214."). Further, a "local government" is prohibited from "adopt[ing] or enforc[ing] an ordinance or resolution that would conflict with any provision of [the CCA]." § 18–12–214(1)(a).[3]

¶ 15 The exclusions to the CCA—areas of the state where a CCA permit is "specifically limited" under section 18–12–214—prohibit the carrying of a concealed handgun (1) into a place where the carrying of handguns is prohibited by federal law; (2) onto the real property "of a public elementary, middle, junior high, or high school" except in enumerated circumstances; and (3) into a public building at which security personnel and devices screen each entrant for weapons and subsequently the security personnel require any weapons to be left in their possession while the entrant is in the building. § 18–12–214(2)–(4). Although the General Assembly expressly listed other educational institutions as excluded from the CCA, it did not place

---

more stringent "reasonable exercise" standard of review.

3. Similarly, section 18–12–201 prohibits sheriffs from further regulating or restricting the issuance of permits. "An action or rule [1] that encumbers the permit process by placing bur-

dens on the applicant beyond those sworn statements and specified documents detailed in [the CCA] or [2] that creates restrictions beyond those specified in [the CCA] is in conflict with the intent of [the CCA] and is prohibited." § 18–12–201(3).

the University of Colorado campuses on the list. *See* § 18–12–214(3). In addition, the CCA does not limit, restrict, or prohibit any rights that a "private property owner, private tenant, private employer, or private business entity" may have to exclude handguns. § 18–12–214(5).

¶ 16 The Board of Regents is granted broad authority by both the Colorado Constitution and statutes. The Colorado Constitution vests the Board with "the general supervision of [its] respective institutions and the exclusive control and direction of all funds of and appropriations to [its] respective institutions, unless otherwise provided by law." Colo. Const. art. VIII, § 5. The General Assembly has authorized the Board to "enact laws for the government of the university," § 23–20–112(1), C.R.S. (2011), and to "promulgate rules and regulations for the safety and welfare of students, employees, and property," § 23–5–106(1), C.R.S. (2011). It is pursuant to this authority that the Board adopted and enforced the Policy.

¶ 17 The Board argues that the CCA does not divest it of its authority to adopt and enforce the Policy. The Board asserts that it holds special, constitutional authority to enact policies governing the University of Colorado. Pointing to article VIII, section 5's phrase "unless otherwise provided by law," the Board contends that the CCA does not "provide by law" that the authority has been divested in this instance. Instead, it argues that such divestment must be done expressly, which, it contends, was not done in the case. The Board also points out that the CCA only prohibits "local governments," a phrase that would not include the University of Colorado, from adopting or enforcing laws that conflict with the CCA.

¶ 18 We disagree with the Board. Instead, the CCA's comprehensive statewide purpose, broad language, and narrow exclusions lead us to conclude that the General Assembly divested the Board of Regents of its authority in this instance. In other words, under article VIII, section 5 of the Colorado Constitution, the CCA "otherwise provide[s] by law."

¶ 19 In its legislative declaration, the General Assembly makes clear that the CCA is meant to be a statewide comprehensive scheme. The General Assembly found it "necessary that the state occupy the field of regulation of the bearing of concealed handguns." § 18–12–201(1)(e). Further, the General Assembly found that the "permitting and carrying of concealed handguns is a matter of statewide concern," and that therefore "[i]t is necessary to provide statewide uniform standards." § 18–12–201(2)(a)–(b).

¶ 20 The CCA achieved its intent to bring about "statewide uniform standards" through its substantive provisions. Twice the CCA expressly states that, except as limited by the CCA itself, a permit to carry a concealed handgun authorizes the permittee to carry a concealed handgun *"in all areas of the state."* § 18–12–204(1)(b) (emphasis added); § 18–12–214(1)(a) (emphasis added). Further, the CCA's exclusions—"specifically" noted under section 18–12–214—are narrow and do not include public universities. Relevant here, the CCA expressly excludes public elementary, middle, junior high, and high schools, but not public universities. § 18–12–214(3). We agree with the court of appeals that, "[h]ad the legislature intended to [exclude] universities, it knew how to do so." *Students for Concealed Carry,* — P.3d —, —; *see also Beeghly v. Mack,* 20 P.3d 610, 613 (Colo. 2001) (citing the interpretive canon *expressio unius exclusio alterius*—"the inclusion of certain items implies the exclusion of others"—and concluding that because the legislature had included a particular remedy in one statute but not in another, the legislature could not have intended the particular remedy in the latter).

¶ 21 In fact, when it enacted the CCA, the General Assembly amended a related criminal statute that applies to universities expressly. S. 03–24, 64th Leg., 1st Sess. (Colo. 2003); § 18–12–105.5(1), C.R.S. (2011) (making it a class six felony to carry a deadly weapon onto real estate of "any public or private elementary, middle, junior high, high, or vocational school *or any public or private college, university, or seminary* " (emphasis added)). Moreover, the amended language in the criminal statute actually directs the reader back to the CCA's school exclusion,

where universities are notably absent. § 18–12–105.5(d.5).

¶ 22 Our conclusion is not changed by the fact that "local governments" are expressly prohibited from "adopt[ing] or enforc[ing] an ordinance or resolution that would conflict with any provision of [the CCA]." § 18–12–214(1)(a). Although the Board is not typically considered a "local government," *see* § 24–32–102, C.R.S. (2011) (defining a "local government" as "all municipal corporations, quasi municipalities, counties, and local improvement and service districts of this state"), the CCA is clear that a permittee is authorized to carry a concealed handgun in *"all* areas of the state, *except as specifically limited"* by the statute, § 18–12–214(1)(a) (emphasis added). As explained above, the University of Colorado campuses are not included in those "specifically limited" areas. The fact that "local governments" are expressly prohibited from adopting provisions that conflict with the CCA does not take away from the fact that a permittee is authorized to carry a concealed handgun in "all areas of the state, except as specifically limited" by the statute. Instead, the prohibition on local governments merely reinforces the scope of the "all areas of the state" provision. To put it differently, even if the Board of Regents is not considered a "local government," the Policy would still conflict with the CCA's clear command that a permittee is authorized to carry a concealed handgun in "all areas of the state, except as specifically limited" by the statute.

¶ 23 Our conclusion that the General Assembly divested the Board of Regents of its authority in this instance is further supported by our caselaw. The Board contends that this case should be governed by *Associated Students v. Regents of the University of Colorado,* 189 Colo. 482, 543 P.2d 59 (1975), *superseded by statute,* § 24–6–402(1)(d), C.R.S. (2011), and *Uberoi v. University of Colorado,* 686 P.2d 785 (Colo.1984), *superseded by statute,* § 24–72–202(1.5), C.R.S. (2011). We disagree and instead find that *Ramos v. Regents of the University of Colorado,* 759 P.2d 726 (Colo.1988), provides the proper analytical framework in this case.

¶ 24 In *Associated Students,* we were tasked with determining whether the Open

Meetings Law of the Colorado Sunshine Act of 1972—which applied to "[a]ll meetings of two or more members of any board ... or other policy-making or rule-making body of any state agency or authority ... *except as may be otherwise provided in the constitution* "—divested the Board of its authority to hold executive meetings closed to the public. 189 Colo. at 484, 543 P.2d at 60–61 (emphasis added). We concluded the constitutional phrase "unless otherwise provided by law" allows the Board's authority to be divested only "when a legislative enactment expressly so provides." 189 Colo. at 485, 543 P.2d at 61. And "the [Sunshine] Act contain[ed] no such language." 189 Colo. at 485, 543 P.2d at 62. We did not discuss the effect of the Sunshine Act's limiting clause, which limited the act to all meetings "except as may be otherwise provided in the constitution."

¶ 25 A decade later, we addressed a similar question in *Uberoi,* where we considered whether the Open Records Act divested the Board of its authority to keep certain records confidential. 686 P.2d at 786–87. Like the Sunshine Act in *Associated Students,* the Open Records Act was broadly worded and included a limiting clause. The act provided that "all public records shall be open for inspection by any person at reasonable times ... *except ... as otherwise specifically provided by law."* *Id.* at 788 (emphasis added). Using the same rationale as *Associated Students,* we concluded that the relevant provisions of the Open Meetings Law did not divest the Board of Regents of its authority. *Id.* at 788–89. We noted that "the specific supervisory control over the university granted to the [Board] can be divested only by a legislative enactment expressly so providing." *Id.* at 788. And the Open Records Act "nowhere specifically refers to the [University of Colorado] nor to governing bodies of educational institutions." *Id.* at 788 (quoting trial court opinion).

¶ 26 Finally, we revisited the issue of the Board's authority in *Ramos.* In that case, we considered whether a civil rights statute divested the Board of Regents of its authority over certain employment discrimination matters, instead placing such authority in the Colorado Civil Rights Commission. *Ramos,*

759 P.2d at 727. The statutory scheme covered "employers," which included "the state of Colorado or any political subdivision, commission, department, institution, or school district thereof, and every other person employing persons within the state," except for certain religious institutions. *Id.* at 729. The Board argued, similar to its argument here, that the statutory scheme failed to explicitly identify the university as an "employer," and therefore, under *Associated Students* and *Uberoi*, the statutory scheme did not divest it of authority. *Id.* We rejected the Board of Regents' argument, finding that the General Assembly meant to include the university in the statutory scheme.

¶ 27 We noted that the statutory scheme applied on a "statewide basis," *id.* at 731, and was "comprehensive," *id.* at 732. We found "especially significant" the "breadth of language used by the General Assembly in defining the word 'employer.'" *Id.* at 731. Further, we noted that the General Assembly "expressly exclude[d] from the definition [of 'employer'] certain religious organizations and associations but no other category of employer." *Id.* We thought it would make little sense for the General Assembly to define "employer" so broadly and set forth the Act's only exclusion expressly, yet still intend to exclude the university. *Id.* at 731. Accordingly, we held that "the supervisory autonomy of the Regents must yield" to the statutory scheme. *Id.* at 735.

¶ 28 Importantly, we distinguished *Associated Students* and *Uberoi* on the ground that the statutes in those cases contained a limiting clause, whereas the statutory scheme in *Ramos* did not. *Id.* at 733–34. As noted above, the Sunshine Act in *Associated Students* applied to all meetings "except as may be otherwise provided in the constitution," 189 Colo. at 484, 543 P.2d at 60–61, and the Open Records Act in *Uberoi* applied to all records "except ... as otherwise specifically provided by law," 686 P.2d at 788. In both cases, the legislature had included statutory

language that arguably preserved the Board's preexisting statutory and constitutional authority to adopt policies governing the university. It therefore made sense in those cases to conclude that, in the absence of express statutory language directed toward the Board's authority, its preexisting authority was preserved. *See Associated Students,* 189 Colo. at 485, 543 P.2d at 62 (noting that, because of the presumption against implied repeals, the court would not hold that the Sunshine Act impliedly repealed the Board's preexisting statutory and constitutional authority to govern university affairs); *Uberoi,* 686 P.2d at 787–89 (applying this reasoning to the Open Records Act).

¶ 29 By contrast, we concluded that the statutory scheme in *Ramos*—which not only lacked a limiting clause, but also contained a comprehensive statewide purpose, broad language, and narrow exclusions—did not permit the conclusion that the legislature had preserved the Board's preexisting authority. 759 P.2d at 733–34; *see also City of Littleton v. State,* 855 P.2d 448, 454 (Colo.1993) (holding that, under *Ramos,* a statutory scheme with broad purposes that applied to "any public or private user" applied to the State Community Colleges Board). Like the statutory scheme at issue in *Ramos,* the CCA lacks a limiting clause, and as discussed above contains a statewide purpose, broad language, and narrow exclusions. Consequently, we hold that, as in Ramos, the CCA does not permit the conclusion that the Board's preexisting authority to regulate concealed handgun possession was preserved.[4]

■ ¶ 30 In sum, we hold that the CCA divested the Board of Regents of its authority to regulate concealed handgun possession on campus. Accordingly, we agree with the court of appeals that, by alleging the Policy violates the CCA, the Students have stated a claim for relief. Because we affirm on statutory grounds, we do not consider the Students' constitutional claim.[5]

4. On the same ground, we do not find persuasive the Attorney General Opinion issued on June 17, 2003, which concluded that the Board had not been divested of its authority because the language of the CCA was not express.

5. The Students conceded in their brief and at oral argument that we need not reach the constitutional question if we recognized their statutory right to carry a concealed weapon under the CCA.

### III.

¶ 31 For the reasons set forth above, we affirm the court of appeals on the ground that the Students have stated a claim for relief by alleging that the Policy violates the CCA, and remand the case for further proceedings consistent with this opinion.