**Brandon COATS, Plaintiff–Appellant,**

v.

**DISH NETWORK, L.L.C., Defendant–Appellee.**

**Court of Appeals Nos. 12CA0595 & 12CA1704**

Colorado Court of Appeals, Div. A.

Announced April 25, 2013

Arapahoe County District Court No. 11 CV 1464, Honorable Elizabeth B. Volz, Judge.

Thomas K. Carberry, Denver, Colorado; The Evans Firm, LLC, Michael D. Evans, Denver, Colorado, for Plaintiff–Appellant.

Martinez Law Group, P.C., Meghan W. Martinez, Denver, Colorado, for Defendant–Appellee.

Opinion by CHIEF JUDGE DAVIDSON

¶ 1 The primary question before us is whether federally prohibited but state-licensed medical marijuana use is "lawful activity" under section 24–34–402.5, C.R.S.2012, Colorado's Lawful Activities Statute. If it is, employers in Colorado would be effectively prohibited from discharging an employee for off-the-job use of medical marijuana, regardless that such use was in violation of federal law. We conclude, on reasoning different from the trial court's analysis, that such use is not "lawful activity."

¶ 2 We also address whether a section 24–34–402.5 claim is equivalent to a tort for purposes of the mandatory attorney fees pro-

vision of section 13–17–201, C.R.S.2012. We conclude that the answer to this question is also no. Thus, we affirm in part and reverse in part.

## I. Background

¶ 3 After being terminated, plaintiff, Brandon Coats, filed a complaint against his former employer, defendant, Dish Networks, L.L.C.

¶ 4 According to the complaint, plaintiff, a quadriplegic, is licensed by the state of Colorado to use medical marijuana pursuant to the Medical Marijuana Amendment, Colo. Const. art. XVIII, § 14 (Amendment). Plaintiff alleged that he used marijuana within the limits of the license, never used marijuana on defendant's premises, and was never under the influence of marijuana at work. Defendant fired plaintiff after he tested positive for marijuana, which established a violation of defendant's drug policy. Nothing in the record indicates that defendant had any other justification for the discharge.

¶ 5 Plaintiff filed this action, claiming that his termination violated the Lawful Activities Statute, section 24–34–402.5, an employment discrimination provision of the Colorado Civil Rights Act (CCRA). The statute prohibits an employer from discharging an employee for "engaging in any lawful activity off the premises of the employer during nonworking hours," subject to certain exceptions. § 24–34–402.5. Defendant filed a motion to dismiss, arguing that the use of medical marijuana was not "lawful activity" because it was prohibited under both state law and federal law.

¶ 6 The trial court addressed only the state law issue, and relying on *Beinor v. Indus. Claim Appeals Office*, 262 P.3d 970, 978 (Colo.App.2011), decided that plaintiff's medical marijuana use was not "lawful activity" under Colorado law. *Id.* (Amendment did not establish state constitutional right to state-licensed medical marijuana use, but rather created an affirmative defense from prosecution for such use). The court therefore dismissed the complaint for failure to state a claim. Subsequently, the court granted defendant's motion for attorney fees pur-

suant to section 13–17–201, agreeing with defendant that plaintiff's claim was a tort for purposes of that statute.

¶ 7 Plaintiff separately appealed the judgment of dismissal and the attorney fees award. We have consolidated the cases. On different reasoning, we affirm the judgment dismissing plaintiff's complaint for failure to state a claim. *See In re Marriage of Rodrick*, 176 P.3d 806, 810 (Colo.App.2007) ("[a]n appellate court may affirm a trial court's correct judgment based on different reasoning than the trial court used"). However, we reverse the order granting defendant its attorney fees.

## II.  State–Licensed Medical Marijuana Use Is Not "Lawful Activity" for Purposes of Section 24–34–402.5

¶ 8 At the time of plaintiff's termination, all marijuana use was prohibited by federal law. *See* 21 U.S.C. § 844(a); *Gonzales v. Raich*, 545 U.S. 1, 29, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (state law authorizing possession and cultivation of marijuana does not circumscribe federal law prohibiting use and possession); *Ross v. RagingWire Telecommunications, Inc.*, 42 Cal.4th 920, 70 Cal.Rptr.3d 382, 174 P.3d 200, 204 (2008) ("No state law could completely legalize marijuana for medical purposes because the drug remains illegal under federal law, even for medical users." (citations omitted)). It remains so to date.

¶ 9 Plaintiff acknowledges that medical marijuana use is illegal under federal law, but argues that his use was nonetheless "lawful activity" for purposes of section 24–34–402.5 because the statutory term "lawful activity" refers to only state, not federal law. We disagree.

■ ¶ 10 Like the trial court, we accept as true all averments of material fact and view the allegations of the complaint in the light most favorable to the plaintiff. *See Hemmann Management Services v. Mediacell, Inc.*, 176 P.3d 856, 858 (Colo.App.2007). Interpreting the statutory term "lawful activity" presents a question of law that we review de novo. *See Dubois v. People*, 211 P.3d 41, 43 (Colo.2009). When interpreting a statute, we aim to ascertain and give effect to the

intent of the legislature based on the plain and ordinary meaning of the statutory language. *See McCall v. Meyers*, 94 P.3d 1271, 1272 (Colo.App.2004). We may also examine the legislative history to discern the policy objective of a statute and to ensure that our interpretation is consistent with the legislature's intent. *See Allstate Ins. Co. v. Schneider Nat'l Carriers, Inc.*, 942 P.2d 1352, 1356 (Colo.App.1997), *aff'd sub nom. Farmers Ins. Exch. v. Bill Boom Inc.*, 961 P.2d 465 (Colo.1998).

¶ 11 Section 24–34–402.5(1), C.R.S.2012, provides in pertinent part:

> It shall be a discriminatory or unfair employment practice for an employer to terminate the employment of any employee due to that employee's engaging in any lawful activity off the premises of the employer during nonworking hours . . . .

¶ 12 The statute does not define the word "lawful." Thus, we must look to its ordinary meaning. *See Marks v. Koch*, 284 P.3d 118, 123 (Colo.App.2011) ("When a statute does not define its terms but the words used are terms of common usage, we may refer to dictionary definitions to determine the plain and ordinary meanings of those words."); *Mounkes v. Indus. Claim Appeals Office*, 251 P.3d 485, 487 (Colo.App.2010) ("if the statutory language is clear and unambiguous, we give the words their ordinary meaning and apply the statute as written"); *Cerbo v. Protect Colorado Jobs, Inc.*, 240 P.3d 495, 501, n. 4 (Colo.App.2010) (to determine meaning of statutory term, we may look to dictionary definitions).

¶ 13 The plain and ordinary meaning of "lawful" is that which is "permitted by law." *Black's Law Dictionary*, 965 (9th ed. 2009); *see, e.g., Hougum v. Valley Memorial Homes*, 574 N.W.2d 812, 820 (N.D.1998) (interpreting the word "lawful" in the North Dakota Human Rights Act to mean "authorized by law and not contrary to, nor forbidden by law" (citing *Black's Law Dictionary* 797 (5th ed. 1979))).

■ ¶ 14 Thus, because activities conducted in Colorado, including medical marijuana use, are subject to both state and federal law, *see, e.g., Raich*, 545 U.S. at 29,

125 S.Ct. 2195 (federal Controlled Substances Act applies to state activities including marijuana use), for an activity to be "lawful" in Colorado, it must be permitted by, and not contrary to, both state and federal law. Conversely, an activity that violates federal law but complies with state law cannot be "lawful" under the ordinary meaning of that term. Therefore, applying the plain and ordinary meaning, the term "lawful activity" in section 24–34–402.5, means that the activity—here, plaintiff's medical marijuana use—must comply with both state and federal law. *See generally* Matthew C. Macy, *Employment Law and Medical Marijuana – An Uncertain Relationship*, 41 Colo. Law. 57, 60 (Jan.2012) (observing that medical marijuana's continuing illegality under federal law "likely will be sufficient to remove the employee from the protection of § [24–34–]402.5").

¶ 15 Based on the premise that the legislature intended that section 24–34–402.5 protect employees, plaintiff contends that we must read "lawful activity" to include activity that is prohibited by federal law, but not state law. However, while we agree that the general purpose of section 24–34–402.5 is to keep an employer's proverbial nose out of an employee's off-site off-hours business, *see* Hearing on H.B. 90–1123 before the S. Comm. on Business Affairs and Labor, 57th Gen. Assemb., 2d Sess. (Mar. 12, 1990) (statements of Sens. Meiklejohn, Wells, and Martinez), we can find no legislative intent to extend employment protection to those engaged in activities that violate federal law.

¶ 16 First, while the statute promotes a "hands-off" policy for a broad range of off-the-job employee behavior, it still maintains the larger balance between employer and employee rights reflected in Colorado's law of at-will employment. *See* § 24–34–402.5(1)(a), C.R.S.2012 (employers may terminate an employee for lawful off-the-job activity if it "[r]elates to a bona fide occupational requirement or is reasonably and rationally related to ... employment activities and responsibilities"); *see, e.g., Wisehart v. Meganck,* 66 P.3d 124, 126 (Colo.App.2002) (at-will employment in Colorado allows either the employee or the employer to terminate

employment at any time without cause; this balance "promotes flexibility and discretion for employees to seek the best position to suit their talents and for employers to seek the best employees to suit their needs").

¶ 17 Second, there is no reference in the legislative discussions to the word "lawful," or to whether, by the term "lawful activity," the legislature intended to include activities prohibited only by federal law. *See* Hearing on H.B. 90–1123 before the H. Comm. on Agriculture, Livestock and Natural Resources, 57th Gen. Assemb., 2d Sess. (Jan. 24, 1990); Second Reading of H.B. 90–1123 before the H., 57th Gen. Assemb., 2d Sess. (Feb. 5, 1990); Third Reading of H.B. 90–1123 before the H., 57th Gen. Assemb., 2d Sess. (Feb. 7, 1990); Hearing on H.B. 90–1123 before the S. Comm. on Business Affairs and Labor, 57th Gen. Assemb., 2d Sess. (Mar. 12, 1990); Second Reading of H.B. 90–1123 before the S., 57th Gen. Assemb., 2d Sess. (Mar. 23, 1990).

¶ 18 Yet, notwithstanding state police powers generally, there are numerous activities, often of major import, that are controlled or regulated exclusively by federal law. *See, e.g.,* 8 U.S.C. § 1227(a)(1)(A) (no Colorado state law counterpart; persons entering United States without documentation subject to removal); 17 U.S.C. § 506 (no Colorado state law counterpart; establishes offense of infringing copyrights on certain works); *see also* U.S. Const. art. VI, cl. 2 (Supremacy Clause).

¶ 19 Thus, forbidding a Colorado employer from terminating an employee for federally prohibited off-the-job activity is of sufficient policy import that we cannot infer, from plain statutory language to the contrary and silence in the legislative discussions, the legislative intent to do just that. *See Allstate Ins. Co.,* 942 P.2d at 1356 ("One of the primary uses of legislative history as an aid to statutory construction is to discern the policy objective to be achieved by a statute, so that a court may consider the consequences of a proposed construction and adopt a reading that will achieve consequences consistent with legislative intent."); *Grossman v. Columbine Medical Group, Inc.,* 12 P.3d 269, 271 (Colo.App.1999) (it is for the legislature,

and not the courts, to enunciate the public policy of the state); *see also Shipley v. People*, 45 P.3d 1277, 1282 (Colo.2002) (special offender statute requiring specific "term" for sentencing did not limit court's discretion to impose penalties aside from incarceration because nothing in statutory language or legislative history suggested such intent); *cf. Roe v. TeleTech Customer Care Management (Colorado) LLC*, 171 Wash.2d 736, 257 P.3d 586, 597 (2011) (state medical marijuana amendment did not establish a public policy in favor of medical marijuana use on which a claim for wrongful discharge in violation of public policy could be based because, in part, that would require employers to allow employees to violate federal law).

¶ 20 Moreover, a review of Colorado statutes shows that if the legislature had wanted to insulate employees from discharge for off-the-job activities illegal only under federal law, it knew how to accomplish that goal. *Compare, e.g.*, § 8–75–101(2)(a)(I), C.R.S. 2012 ("any other state law"), *with* § 18–17–103(6), C.R.S.2012 ("unenforceable under state or federal law"), § 11–59.7–104 (1)(b)(I)(B), C.R.S.2012 ("obligation under federal law"), *and* § 33–6–115.5(1), C.R.S. 2012 (cannot interfere with "lawful" hunting, trapping, or fishing); *see generally Students for Concealed Carry on Campus, LLC v. Regents of University of Colorado*, 280 P.3d 18, 23 (Colo.App.2010) ("Had the legislature intended to exempt universities, it knew how to do so."), *aff'd*, 2012 CO 17, 271 P.3d 496.

¶ 21 In support of plaintiff's assertion that under the statute, activity that violates federal law is "lawful," the dissent cites to cases stating that state courts construing a term in a state statute usually decline to seek guidance from a federal definition of that term. *See, e.g.*, *Cox v. Microsoft Corp.*, 290 A.D.2d 206, 206–07, 737 N.Y.S.2d 1, 2 (2002) (federal case law is irrelevant to state court's determination of whether trebling of damages is "penal" as that term is used in state statute). While this proposition is generally true, any federal definition of "lawful activity" was of no relevance to our analysis here.

¶ 22 In a different argument, relying on *People v. Tilehkooh*, 113 Cal.App.4th 1433, 7 Cal.Rptr.3d 226 (2003), plaintiff also contends that interpreting the term "lawful activity" to implicate both state and federal law improperly "compels" Colorado to enforce federal criminal law. We disagree, and instead follow the reasoning of *People v. Watkins*, 2012 COA 15, ¶ 33, 282 P.3d 500, which rejected the proposition set forth by the California court in *Tilehkooh* that the state court was effectively enforcing federal law through a state statute by revoking probation based on a violation of federal law. *See Watkins*, ¶¶ 33–34, 282 P.3d 500. Just as revoking state probation for a violation of federal law does not result in a federal charge or sentence, section 24–34–402.5 does not enforce federal law by excluding from its protection individuals who were terminated for violating federal law.

¶ 23 Thus, because plaintiff's state-licensed medical marijuana use was, at the time of his termination, subject to and prohibited by federal law, we conclude that it was not "lawful activity" for the purposes of section 24–34–402.5. Based on this disposition, we need not address plaintiff's arguments concerning whether the Amendment created a state constitutional right to medical marijuana use.

### III. Defendant is Not Entitled to Attorney Fees Pursuant to Section 13–17–201

¶ 24 After the court dismissed plaintiff's claim, defendant moved for attorney fees pursuant to section 13–17–201, which mandates an award of reasonable attorney fees to a defendant when a court dismisses, pursuant to C.R.C.P. 12(b), an "action[ ] brought as a result of ... an injury ... occasioned by the tort of any other person." § 13–17–201.

¶ 25 The court granted defendant's motion, determining that section 13–17–201 applied because plaintiff's claim constituted a tort claim. On appeal, plaintiff contends that this conclusion was incorrect. We review this issue de novo, and agree with plaintiff. *See Robinson v. Colorado State Lottery Division*, 179 P.3d 998, 1009 (Colo.2008) (reviewing de novo whether section 13–17–201 applies).

[4] ¶ 26 Initially, we reject defendant's assertion that plaintiff failed to properly preserve this issue for our review. To the contrary, plaintiff's response to defendant's mo-

tion sufficiently alerted the trial court that plaintiff was contesting the characterization of his claim as a tort for the purposes of section 13–17–201. *See Qwest Services Corp. v. Blood,* 252 P.3d 1071, 1087–88 (Colo.2011) (issue of lack of limiting instruction preserved for appeal even though party failed to ask for limiting instruction because party "directed the trial court's attention" to the issue).

¶ 27 To determine whether section 13–17–201 applies to plaintiff's claim, we "focus on the manner in which [the claim was] pleaded." *Dubray v. Intertribal Bison Co–op.,* 192 P.3d 604, 607 (Colo.App.2008); *see also Robinson,* 179 P.3d at 1009 (the controlling issue is how the plaintiff has characterized the claim in the complaint).

¶ 28 Here, the complaint pleaded a single claim based on a violation of section 24–34–402.5, which, as discussed, is an employment discrimination provision of the CCRA. *See Watson v. Public Service Co.,* 207 P.3d 860, 865–66 (Colo.App.2008) (General Assembly placed section 24–34–402.5 within the "discriminatory or unfair employment practices" section of the CCRA). The complaint does not refer to or imply a tort claim, and the only damages plaintiff specifically requests are back pay and benefits (the sole remedies authorized by section 24–34–402.5); *cf. Goodson v. American Standard Ins. Co.,* 89 P.3d 409, 415 (Colo.2004) (traditional tort principles include availability of compensatory damages for emotional distress, pain and suffering, inconvenience, fear and anxiety, and impairment of quality of life).

¶ 29 Defendant asserts, nevertheless, that a section 24–34–402.5 claim is the equivalent of an invasion of privacy tort, and, even if not, exhibits sufficient general tort characteristics to be equivalent to a tort claim. We disagree with both arguments.

### A. A Section 24–34–402.5 Claim Is Not an Invasion of Privacy Tort

¶ 30 The only invasion of privacy torts recognized in Colorado that are possibly analogous to a section 24–34–402.5 claim are intrusion upon seclusion and unreasonable disclosure of private fact. These torts protect an individual's privacy interest by prohibiting both an intentional intrusion on that interest and the discovery and disclosure of private information. *See Doe v. High–Tech Institute, Inc.,* 972 P.2d 1060, 1065 (Colo.App.1998) (intrusion upon seclusion is intentional intrusion upon seclusion or solitude that would be offensive to a reasonable person; unreasonable disclosure of private fact requires disclosure of private fact to the public, which would be highly offensive to reasonable person).

¶ 31 In contrast, by its plain terms, section 24–34–402.5 offers no protection against intrusion into privacy or discovery and disclosure of private information. Instead, it protects an employee from discriminatory termination based on lawful, off-the-job activity.

¶ 32 Relying on *Gwin v. Chesrown Chevrolet, Inc.,* 931 P.2d 466, 469 (Colo.App.1996) (without analysis, treating a section 24–34–402.5 claim as a privacy tort), defendant argues that section 24–34–402.5 is at its essence a privacy statute because it prohibits termination based on private activity. We disagree. While section 24–34–402.5 prohibits termination based on lawful, off-the-job activity that happens to be private, the private nature of the activity is not required by section 24–34–402.5. To the contrary, section 24–34–402.5 also prohibits termination based on lawful, off-the-job activity that is not private. *See generally Banks v. Chesapeake & Potomac Telephone Co.,* 802 F.2d 1416, 1424 (D.C.Cir.1986) (two discrimination statutes not analogous where one "does not apply to many forms of discrimination remediable under [the other]"). Therefore, we disagree with defendant and *Gwin,* and conclude that a section 24–34–402.5 claim is not equivalent to an invasion of privacy tort because the interests protected by each are different.

### B. A Section 24–34–402.5 Claim Does Not Exhibit Sufficient General Tort Characteristics

¶ 33 We are aware of no general authoritative definition of a tort to which we could usefully compare a section 24–34–402.5 claim. *See, e.g.,* 1 Stuart M. Speiser et al., *The American Law of Torts* 5 (2003) ("[T]he ab-

straction 'tort' is not only nebulous but also protean.... 'A really satisfactory definition of a tort has yet to be found'" (quoting Prosser, *Law of Torts* 1 (4th ed.))).

¶ 34 However, the primary purpose of tort law is to compensate plaintiffs for injuries wrongfully suffered at the hands of others. *See id.* at 12 ("There are broad judicial utterances to the effect that, [ ] [t]he primary purpose of tort law is that of compensating plaintiffs for the injuries they have suffered wrongfully at the hands of others.[ ]"); *Robinson*, 179 P.3d at 1003 (claim lies in tort for purposes of Colorado Governmental Immunity Act (CGIA) when "injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law, and ... relief seeks to compensate the plaintiff for that injury"); *City of Colorado Springs v. Conners*, 993 P.2d 1167, 1176 (Colo.2000) (for purposes of CGIA, torts are claims seeking "compensatory relief for personal injuries suffered as a consequence of prohibited conduct," whereas claims seeking to "redress discriminatory conduct and ... not compensate the plaintiff for any personal injuries" are not torts).

¶ 35 Defendant argues that plaintiff's complaint alleged a tort because it sought compensation, in the form of back pay, for the injury of being terminated based on lawful, off-the-job activity in violation of section 24–34–402.5.

¶ 36 However, as discussed, section 24–34–402.5 is located in the "discriminatory or unfair employment practices" section of the CCRA. This placement demonstrates the General Assembly's intent that the purpose of the statute is not to compensate an individual for breach of a statutory duty, as defendant suggests, but to eliminate workplace discrimination based on lawful, off-the-job activity. *See Brooke v. Restaurant Services, Inc.*, 906 P.2d 66, 71 (Colo.1995) ("the [CCRA] is not designed primarily to compensate individual claimants, but to eliminate unfair or discriminatory practices as defined by the Act"); *Conners*, 993 P.2d at 1174 (CCRA was designed primarily to eliminate discrimination and "any benefits to an individual claimant, such as the recovery of back pay, are 'merely incidental' to the Act's

greater purpose of eliminating workplace discrimination" (quoting *Brooke*, 906 P.2d at 71)); *Watson*, 207 P.3d at 866 (the CCRA "does not create" "a tort claim in the nature of compensation for personal injuries" (citing *Conners*, 993 P.2d at 1174)).

¶ 37 Moreover, in contrast to the broad compensation for pain and suffering, harm to reputation, emotional distress, and other injuries often available in a tort claim, section 24–34–402.5 authorizes only back pay and benefits that would have been due absent the discriminatory termination. § 24–34–402.5; *cf. Goodson*, 89 P.3d at 415 (traditional tort principles include availability of compensatory damages for emotional distress, pain and suffering, inconvenience, fear and anxiety, and impairment of quality of life). Thus, section 24–34–402.5 excludes most traditional tort remedies, and simply restores the plaintiff to the wage and employment position he or she would have had absent the unlawful discrimination.

¶ 38 We are not persuaded to the contrary by defendant's citation to federal cases stating, in other contexts, that federal statutory discrimination claims are torts. Indeed, in most federal decisions analyzing whether a particular federal statutory discrimination claim sounds in tort, the result turns on the purpose of the statute and the nature of the remedy that Congress has provided, an approach consistent with our analysis and result here. *See and compare, e.g., United States v. Burke*, 504 U.S. 229, 241, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (Title VII employment discrimination claim "whose sole remedial focus is the award of back wages" does not redress a tort-like personal injury), *criticized on other grounds by O'Gilvie v. United States*, 519 U.S. 79, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996), *with Curtis v. Loether*, 415 U.S. 189, 195–96, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (discrimination claim based on fair housing provision of federal Civil Rights Act of 1968 sounds in tort because it is analogous to other recognized torts, but, "[m]ore important, the relief sought here—actual and punitive damages— is the traditional form of relief offered in the courts of law"), *and Meyer v. Holley*, 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753

(2003) (relying on reasoning of *Curtis*, 415 U.S. at 195–96, 94 S.Ct. 1005, to determine whether federal discrimination claim sounds in tort); *see also McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1255 (10th Cir. 1988) (acknowledging split of authority on the issue of whether § 1981 claim sounds in tort or contract); *see generally Wilson v. Garcia*, 471 U.S. 261, 268, 277, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (when forced to decide what state cause of action most closely resembles § 1983 claim for purposes of determining statute of limitations, court focused its analysis on "characteriz[ing] the essence of the [§ 1983] claim" and the remedies provided by § 1983), *superseded by statute*, 28 U.S.C. § 1658, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–78, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (28 U.S.C. § 1658 provides statute of limitations for § 1983 claims); *Banks*, 802 F.2d at 1424 (adopting *Wilson v. Garcia* analysis for same issue regarding § 1981 claims and holding that particular state statute not analogous to § 1981 because state statute "does not apply to many forms of discrimination remediable under § 1981").

¶ 39 Accordingly, we disagree with the trial court and conclude that plaintiff's claim was not a tort for purposes of an attorney fees award pursuant to section 13–17–201. Based on this disposition, we also decline defendant's request under section 13–17–201 for attorney fees on appeal.

¶ 40 The judgment dismissing plaintiff's complaint is affirmed and the order awarding attorney fees to defendant is reversed.

Márquez *, J., concurs

Webb, J., dissents

JUDGE WEBB dissenting.

¶ 41 In my view, "lawful activity" under section 24–34–402.5, C.R.S.2012, Colorado's off-duty conduct statute, should be measured by state law. I further conclude that use of marijuana in a manner permitted by the Medical Marijuana Amendment, Colo. Const. art. XVIII, § 14(MMA), is lawful. There-

fore, I respectfully dissent from that portion of the majority opinion which affirms dismissal of plaintiff's section 24–34–402.5 claim, but otherwise concur.

## I. Lawful Activity is Determined by Colorado Law

¶ 42 Colorado criminal law is not coterminous with federal criminal law. Some differences arise from powers held exclusively by the federal government. *See Arizona v. United States*, —— U.S. ——, 132 S.Ct. 2492, 2501, 183 L.Ed.2d 351 (2012) ("States are precluded from regulating conduct in a field that Congress ... has determined must be regulated by its exclusive governance."). Other differences reflect legislative priorities.

¶ 43 Section 24–34–402.5 does not define "lawful activity." Nor does it refer to either state law or federal law. Therefore, the statute is ambiguous because that phrase could incorporate state law, federal law, or both. *See People v. Trusty*, 53 P.3d 668, 676 (Colo. App.2001) ("When the statutory language is susceptible of more than one reasonable interpretation, leading to different results, the statute is ambiguous.").

¶ 44 The majority fills this void with an indisputable dictionary definition of "lawful," which clearly encompasses illegality under both state and federal law. However,

[D]ictionaries must be used as sources of statutory meaning only with great caution. "Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."

*United States v. Costello*, 666 F.3d 1040, 1043 (7th Cir.2012) (quoting *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.1945)).

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2012.

¶ 45 This is so because, "Dictionary definitions are acontextual, whereas the meaning of sentences depends critically on context, including all sorts of background understandings." *Id.* at 1044. Statutory interpretation, by contrast, "demands careful attention to the nuances and specialized connotations that speakers of the relevant language attach to particular words and phrases in the context in which they are being used." *Id.*; *see City of Westminster v. Dogan Constr. Co.,* 930 P.2d 585, 592 (Colo.1997) (citing *Cabell v. Markham* with approval); *Allstate Ins. Co. v. Schneider Nat'l Carriers, Inc.,* 942 P.2d 1352, 1356 (Colo.App.1997) (same), *aff'd sub nom. Farmers Ins. Exch. v. Bill Boom Inc.,* 961 P.2d 465 (Colo.1998).

¶ 46 For these reasons, I look for "the spirit of a statute and not simply the letter of the law." *People v. Manzanares,* 85 P.3d 604, 607 (Colo.App.2003). I begin with the legislative history because "[o]ne of the primary uses of legislative history as an aid to statutory construction is to discern the policy objective to be achieved by a statute, so that a court may consider the consequences of a proposed construction and adopt a reading that will achieve consequences consistent with legislative intent." *Allstate Ins. Co.,* 942 P.2d at 1356.

¶ 47 The legislative discussion of the off-duty conduct statute reflected a desire to protect employees' autonomy in their off-the-job activities, such as smoking and eating patterns that lead to obesity. Consistent with this concern, the statute *protects employees* who engage in lawful conduct from discriminatory discharge, as opposed to *empowering employers* to discharge based on an employee's "unlawful" conduct. Narrowing the scope of employee protection by looking beyond state law to activities that are proscribed only at the federal level would limit this protection. But doing so would contradict the principle that, as a remedial statute, "section 24–34– 402.5 should be broadly construed." *Watson v. Public Service Co.,* 207 P.3d 860, 864 (Colo.App.2008).

¶ 48 When the General Assembly has intended to define a term with reference to both state and federal law, it did so specifically. For example, in section 18–17–103(6), C.R.S.2013, " 'Unlawful debt' means a debt incurred or contracted in an illegal gambling activity or business or which is unenforceable under state or federal law in whole or in part as to principal or interest because of the law relating to usury." *See also* § 11–60–102, C.R.S.2012 (specifying "the laws of this state," "laws of the United States," and the laws of "any of the states thereof"). Other statutes refer to violations of "federal or state law." *See, e.g.,* 25–1.5–103(2)(b.5), C.R.S.2012. Comparing such statutes to the off-duty conduct statute shows that the absence of any reference to federal law in the latter is probative of legislative intent. *See, e.g., Students for Concealed Carry on Campus, LLC v. Regents of University of Colorado,* 280 P.3d 18, 23 (Colo.App.2010) ("Had the legislature intended to exempt universities, it knew how to do so."), *aff'd,* 2012 CO 17, 271 P.3d 496.

¶ 49 Congress has legislated extensively in the field of employer-employee relations. *See, e.g.,* 29 U.S.C. § 621 et seq. (Age Discrimination in Employment Act); 42 U.S.C. § 12132 et seq. (Americans with Disabilities Act); 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964). However, none of these statutes, nor any other of which I am aware, broadly protects employees from discharge based on engaging in lawful off-the-job conduct.

¶ 50 The parties do not cite, nor have I found, a Colorado case addressing whether a court should consider federal law in determining the scope of a Colorado statute that, like the off-duty conduct statute, has no federal counterpart. Courts in other states have declined to do so. *See Cox v. Microsoft Corp.,* 290 A.D.2d 206, 207, 737 N.Y.S.2d 1, 2 (2002) ("Federal case law is at best persuasive in the absence of state authority; it is largely irrelevant to a peculiarly local question. . . . In drafting CPLR 901(b), the Legislature must be deemed to have chosen its language with reference to New York law, not its federal counterpart."); *cf. State v. Cote,* 286 Conn. 603, 619, 945 A.2d 412, 421–22 (2008) ("Had the legislature included a similar provision to apply to § 22a–131a, defining the pertinent terms consistent with, or by reference to, federal law, such action also

would have expressed a clear intent to have the federal definitions control."); *Nika v. State,* 124 Nev. 1272, 1288–89, 198 P.3d 839, 850–51 (2008) ("Our conclusion that the interpretation and definition of the elements of a state criminal statute are purely a matter of state law is reinforced by the fact that jurisdictions differ in their treatment of the terms 'willful,' 'premeditated,' and 'deliberate' for first-degree murder.").

¶ 51 The absence of any federal analogue to the off-duty conduct statute suggests that protecting employees' off-the-job autonomy is primarily a matter of state concern. If Congress perceived a national problem with such state statutes (as it well might, given multistate employers' interest in uniform personnel administration), it could have resolved that problem with legislation empowering employers to discharge employees who have engaged in conduct that violated any federal law. To date, Congress has not done so. Recognition that protecting employees from discharge based on their off-duty conduct is primarily a matter of state concern favors measuring "lawful" based on state law.

¶ 52 Looking only to state law in construing the off-duty conduct statute is also consistent with the authority for Colorado statutes that regulate the employer-employee relationship: "a proper exercise of the police power." *Dunbar v. Hoffman,* 171 Colo. 481, 484, 468 P.2d 742, 744 (1970); *see also Smith–Brooks Printing Co. v. Young,* 103 Colo. 199, 209, 85 P.2d 39, 44 (1938). Under the federal constitution, this power is reserved to the states. U.S. Constitution amend. X; *see, e.g., Hamilton v. Kentucky Distilleries & Warehouse Co.,* 251 U.S. 146, 156, 40 S.Ct. 106, 64 L.Ed. 194 (1919) ("That the United States lacks the police power, and that this was reserved to the states by the Tenth Amendment, is true.").

¶ 53 The language in section 24–34–402.5(1)(a) of the statute, under which an employer may terminate an employee for lawful off-the-job activity if it "[r]elates to a bona fide occupational requirement or is reasonably and rationally related to ... employment activities and responsibilities," does not suggest interpreting "lawful" to include federal criminal prohibitions. If an employee's off-the-job activity violated only federal criminal law, that activity might well warrant termination based on "a bona fide occupational requirement" of the position. But if the employee's activity was unlawful *only* under federal law, *and* it did not relate to such a requirement, then the employee would be protected from termination. This outcome would be consistent with the balancing of employer and employee interests in the statute.

¶ 54 For these reasons, I would interpret "lawful," in the off-duty conduct statute, as measured solely by Colorado law. This interpretation requires me to take up an issue that the majority had no reason to address—whether plaintiff's use of medical marijuana, as described in the complaint, was lawful.

## II. Marijuana Use Compliant with the MMA is Lawful

¶ 55 The dissenting opinion in *Beinor v. Industrial Claim Appeals Office,* 262 P.3d 970, 978 (Colo.App.2011) (Gabriel, J., dissenting), concluded that the MMA "established a right to possess and use medical marijuana in the limited circumstances described therein." I endorse this view. Paraphrasing the analysis could disserve the author and would needlessly lengthen this opinion. *See also* Emma S. Blumer, Comment, *Beinor v. Industrial Claims Appeals Office,* 57 N.Y.L. Sch. L.Rev. 205, 206 (2012/2013).

¶ 56 To be lawful under the off-duty conduct statute, however, conduct need not rise to the level of a constitutional right. Hence, I briefly set forth the reasons why marijuana use compliant with the MMA is at least lawful.

- The MMA states, "A patient's medical use of marijuana, within the following limits, is lawful." Colo. Const. art. XVII, § 14(4)(a).
- The so-called Blue Book refers to the MMA in terms of "legally possess" and "legalize the medical use of." Colorado Legislative Council, Research Pub. No. 475–0, *An Analysis of 2000 Ballot Proposals.*
- Enabling legislation states that the MMA "sets forth the lawful limits on the medi-

cal use of marijuana." § 18–18–406.3(1)(f), C.R.S.2012.

- A division of this court has recognized that under section 18–18–406(1), C.R.S. 2012, "a patient's medical use of marijuana within the limits set forth in the Amendment is deemed 'lawful' under subsection (4)(a) of the Amendment." *People v. Watkins*, 2012 COA 15, ¶ 23, 282 P.3d 500.

¶ 57 Finally, unlike the trial court, I do not read *Watkins* as supporting dismissal of the off-duty conduct claim. *Watkins* dealt with probation conditions under section 18–1.3–204(1), C.R.S.2012, which a court deems "reasonably necessary to ensure that the defendant will lead a law-abiding life." In contrast, the purpose of the off-duty conduct statute is to protect employees' autonomy in their off-the-job activities.

### III. Conclusion

¶ 58 I would reverse the dismissal of plaintiff's off-duty conduct claim. Insofar as that dismissal stands affirmed, however, I concur in the majority's conclusion that defendant is not entitled to recover attorney fees, either below or on appeal.