The **BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF PUEBLO, Colorado, Plaintiff–Appellant,**

v.

**Roy ROMER, Governor of the State of Colorado; The Colorado Department of Social Services; Karen Beye in her capacity as the Acting Executive Director of the Colorado Department of Social Services; The Colorado Board of Social Services; Mamie Lynch; Doctor Robbie Bean; Suzanne Dosh; Dennis Fisher; Mary Kyer; Peggy Stokstad; John P. Stone; David Trujillo; and Richard F. Walker, in their capacity as members of the Colorado Board of Social Services, Defendants–Appellees.**

No. 95CA0837.

Colorado Court of Appeals,
Div. II.

July 11, 1996.

Rehearing Denied Aug. 8, 1996.

Certiorari Granted Feb. 18, 1997.

Terry A. Hart, County Attorney, Tami Yellico, Assistant County Attorney, William D. Lytle, Special Assistant County Attorney, Pueblo, for Plaintiff–Appellant.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Wade Livingston, Assistant Attorney General, Denver, for Defendants–Appellees.

Opinion by Judge JONES.

Plaintiff, Board of County Commissioners of the County of Pueblo (BOCC), appeals the judgment in which the trial court, based on lack of standing, dismissed its claim against defendants, Roy Romer, Colorado Department of Social Services (Department), Karen Beye, the Colorado Board of Social Services, Mamie Lynch, Doctor Robbie Bean, Suzanne Dosh, Dennis Fisher, Mary Kyer, Peggy Stokstad, John Stone, David Trujillo, and Richard Walker. We reverse and remand for further proceedings.

Preliminarily, we note that, effective July 1, 1994, the General Assembly redesignated the Social Service Code, § 26–1–101, et seq., C.R.S. (1989 Repl.Vol. 11B) as the Human Services Code, § 26–1–101, et seq., C.R.S. (1995 Cum.Supp.). However, the General Assembly expressly provided that no suit, action, or other proceeding commenced prior to the effective date of the statutory changes against the newly created Department of Human Services (Department) or its officers "shall abate by reason of the transfer of duties and functions from the [Department of Social Services] to the department of human services." Section 26–1–105.5, C.R.S. (1995 Cum.Supp.). The statutory revisions, thus, appear not to impact on the substantive issues in this case. *See* §§ 256–1–105.5 and 26–1–105.5(8), C.R.S. (1995 Cum.Supp.); *Board of Social Services v. Department of Social Services,* 902 P.2d 407 (Colo.App. 1994).

BOCC brought this action against defendants pursuant to § 24–4–106(4), C.R.S. (1988 Repl.Vol. 10A), C.R.C.P. 57, and C.R.C.P. 106(a)(2) for judicial review of an agency action, a declaratory judgment, and to compel defendants to comply with their statutory duties under Colo. Sess. Laws 1985, ch. 58, § 26–1–126(5) at 290 and §§ 26–1–121(1)(c) and 26–1–122(5), C.R.S. (1989 Repl. Vol. 11B). Prior to the trial court's ruling on cross-motions for summary judgment, the parties entered into a stipulation of facts.

As a part of this stipulation, it was agreed that BOCC was bringing this action in its capacity as the Board of County Commissioners of Pueblo County. In addition, the parties agreed that the State County Contingency Fund (Contingency Fund) is to be used by the Department to provide additional funding to any county whose social services mill levy would have to exceed a certain level in order to meet the administrative and program costs of public assistance and the administrative costs of medical assistance and food stamps within the county. The Contingency Fund is funded solely through appropriations by the General Assembly.

The parties also agreed that, each month between January 1986 and January 1992, the Department received reports containing data concerning actual expenditures of all county departments of social services from the individual counties. As a part of this process, the Department received monthly reports containing data concerning actual expenditures of the Pueblo County Social Services Department. The information contained in those reports accurately set forth Pueblo County's actual expenditures for Contingency Fund purposes for state fiscal years 1987 through 1991.

The parties further agreed that, although the Department could have utilized the data contained in those reports to determine the possibility of a deficit in the Contingency Fund, the Department did not consider the information contained in those reports in determining its anticipated needs for Contingency Fund purposes. From the Department's review of data submitted by all county departments of social services and the funds appropriated by the General Assembly for each of the fiscal years in question, the Department was able to predict that there would be a shortfall in the Contingency Fund for each of the fiscal years in question.

In addition, the parties agreed that for the fiscal years 1987 through 1991, Pueblo County received $1,612,187 less money from the Contingency Fund than it would have received had the General Assembly appropriated sufficient funds each fiscal year to fully fund the Contingency Fund as was requested by the Department in its budget request for appropriations for each year in question. As a result of receiving less money from the Contingency Fund than it expected, the Pueblo County Social Services Fund (Pueblo Fund) showed a deficit for each of the fiscal years in question amounting to a total of $1,612,187.

Finally, the parties agreed that this deficit was caused by the General Assembly's failure to appropriate sufficient funds for the Contingency Fund during the years in question and the failure by the executive director of the Department or the State Board of Social Services to reduce the statewide rate of expenditure for administrative and program costs of public assistance and social services and administrative costs of medical assistance and food stamps to match the

state appropriations shortfall to the Contingency Fund.

Upon review of the briefs submitted by the parties in response to cross-motions for summary judgment, the trial court determined that, under *Board of County Commissioners v. Merit System Council*, 662 P.2d 1093 (Colo.App.1982), BOCC was an inferior state agency to the Department and, therefore, did not have standing to challenge the actions of the Department. Hence, the trial court dismissed BOCC's complaint.

I.

BOCC first contends that the trial court erred in considering defendant's claim that BOCC lacked standing because defendants had waived their right to raise the issue. We disagree.

BOCC argues that, although defendants pled in their answer that BOCC was without standing to bring the action, defendants' disclosure statement failed to raise standing as an issue. Furthermore, BOCC argues that almost three years after filing their answer, and just prior to submitting cross-motions for summary judgment, defendants again raised the issue of standing. BOCC contends that the failure to raise standing as an issue in the disclosure statement and the later untimely re-assertion of that issue constituted a waiver of the right to assert it in summary judgment proceedings.

■ Standing is a jurisdictional issue which can be raised at any stage in an action. *Peters v. Smuggler–Durant Mining Corp.*, 910 P.2d 34 (Colo.App.1995). Furthermore, as a jurisdictional issue, standing can be challenged for the first time on appeal. *Bennett v. Board of Trustees*, 782 P.2d 1214 (Colo. App.1989).

■ Thus, even if defendants had failed to raise the issue of standing in the trial court at all, if raised on appeal, we would be obliged to address it. Therefore, defendants did not waive the issue of BOCC's standing to bring this suit by neglecting to address the issue during the interval between the filing of their answer and the filing of their motion for summary judgment. *See Colorado Department of Social Services v. Board of*

*County Commissioners*, 697 P.2d 1 (Colo.1985)(similar issues raised in dispute between the parties, with the Board as defendant, and no issue of standing was raised or addressed).

II.

BOCC next contends that the trial court erred in its determination that BOCC did not have standing to bring this action for review. We agree.

■ The issue of standing is addressed in two parts: "(1) whether the plaintiff was injured in fact, and (2) whether that injury was to a legal right protected by statutory provisions which allegedly have been violated." The existence of standing, therefore, although necessary to invoke the jurisdiction of the courts, depends, in large measure, upon the merits of the case. *Bennett v. Board of Trustees, supra*, 782 P.2d at 1216.

■ If injury is established by the plaintiff, the court must then determine whether, by the challenged state action, there has been an abrogation of the particular statute creating the right in the plaintiff and underlying its claim. *State Board for Community Colleges & Occupational Education v. Olson*, 687 P.2d 429 (Colo.1984).

Here, the trial court determined that BOCC did not have standing to bring the action because, as an inferior state agency to the Department, it could not challenge the Department's actions. Because we determine that BOCC is before the court as a "person" in its own right, we conclude that the trial court's judgment must be reversed.

A.

■ The Department has cited several cases for the proposition that, as applied here, BOCC is not a "person" but, rather, is an agency that cannot have standing under the State Administrative Procedure Act, § 24–4–101, et seq., C.R.S. (1988 Repl.Vol. 10A) (the Act). We find none of them pertinent here.

One case cited by the Department, *Board of County Commissioners v. Love*, 172 Colo.

121, 470 P.2d 861 (1970), relies upon a prior rendition of the Act that referred to boards of county commissioners as "agencies" rather than as "persons." As agencies, the boards were accorded no standing to challenge actions of ostensibly superior state agencies. But that version of the Act was not in effect during the times pertinent here.

In addition, the Department cites *Martin v. District Court,* 191 Colo. 107, 550 P.2d 864 (1976), *Jefferson County Department of Social Services v. Colorado Department of Institutions,* 784 P.2d 805 (Colo.App.1989), and *Nadeau v. Merit System Council,* 36 Colo. App. 362, 545 P.2d 1061 (1975) to support its position that BOCC does not have standing. These cases involved the lack of standing of county boards of social services and county departments of social services to challenge actions by the Department. But, they did not address the standing of a board of county commissioners to challenge an action by the Department. Furthermore, both *Martin* and *Nadeau* were also decided under the Act prior to amendments in 1979.

The case principally relied upon by the Department and the trial court is *Board of County Commissioners v. Merit System Council, supra.* There, a division of this court determined that a board of county commissioners was an agent of the Department and, therefore, had no standing to challenge an action of the Department. In *Merit System Council,* however, the board of county commissioners sought judicial review, as the party in interest, of a personnel action by the Department under the then newly enacted § 24–4–106(4.5), C.R.S. (1988 Repl.Vol. 10A).

Section 24–4–106(4.5) provides that a board of county commissioners may commence an action "for judicial review of any agency action which is directed to any official, board, or employee of such county or which involves any duty or function of any official, board, or employee of such county with the consent of said official, board, or employee, and to the extent that said official, board, or employee could maintain an action under subsection (4) of this section." Thus, a board of county commissioners bringing suit under § 24–4–106(4.5) has standing to seek judicial review of an agency action only if the party in whose place the board is acting would also have standing in its own right.

In *Merit System Council,* this court determined that since the standing of the Board of County Commissioners of Jefferson County was dependent on the standing of the County Board of Social Services and the County Department of Social Services, and since neither of them could seek judicial review of an action of the State Department of Social Services because they were inferior state agencies, the Board of County Commissioners of Jefferson County was, likewise, without standing to seek judicial review. Here, however, BOCC is not suing under § 24–4–106(4.5) to vindicate rights of another board, agency, official, or employee of the county, but, instead, is suing under § 24–4–106(4) to vindicate its own right to manage the Pueblo County Budget. Accordingly, we conclude that *Merit System Council* is not controlling.

### B.

■ A review of the constitutional and statutory powers conferred upon counties reveals that, concerning the issues in this case, the BOCC is operating far beyond simply its duties as the County Board of Social Services. Acting pursuant to Colo. Const., art. XIV, the General Assembly has conferred upon boards of county commissioners the power to sue or be sued, to appropriate and levy taxes, to manage the business of the county, to provide for a Social Services budget, to manage the county's financial affairs, and to settle all expenditures and receipts of the county. *See* §§ 30–11–101 and 30–11–107, C.R.S. (1986 Repl.Vol. 12A).

The parties have agreed that this case does implicate the Pueblo Fund, created to supplement county expenditures for public assistance. Section 26–1–123, C.R.S. (1989 Repl.Vol. 11B). Additionally, to the extent that the parties recognize that for several years the Pueblo Fund experienced a shortfall that affected the general financial well-being of the county, it is plain that this case was initiated by the BOCC within the context of its powers and duties outside of its capacity as the Pueblo County Board of Social

Services. *See* § 26–1–123, 26–1–124, and 26–1–125, C.R.S. (1989 Repl.Vol. 11B).

Section 24–4–106(4), C.R.S. (1986 Repl.Vol. 10A) of the Act provides that:

[A]ny person adversely affected or aggrieved by any agency action may commence an action for judicial review in the district court within thirty days after such agency action becomes effective. . . .

This provision plainly authorizes persons who are adversely affected or aggrieved by an agency action to initiate review of such action.

The General Assembly, in assessing who may initiate such actions, has defined "person" as including "an individual, partnership, corporation, association, *county,* and public or private organization of any character other than an agency." Section 24–4–102(12), C.R.S. (1988 Repl.Vol. 10A)(emphasis added). *See Douglas County Board of Commissioners v. Public Utilities Commission,* 829 P.2d 1303 (Colo.1992). While specifically setting forth counties as persons, the General Assembly did not enumerate counties or their boards specifically as agencies. *See* § 24–4–102(3), C.R.S. (1988 Repl.Vol. 10A)(definition of "agency").

Because a county is defined as a "person" by the General Assembly, then, "if aggrieved, a county has a statutory right to commence an action for review" of a decision of the Department. *Douglas County Board of Commissioners v. Public Utilities Commission, supra,* 829 P.2d at 1308. Thus, we determine that BOCC has standing to bring this action if it can demonstrate injury in fact to a legally protected interest, and that the injury is due to the action of the Department. *See Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977).

### C.

■ The injury in fact requirement is no small part of the standing doctrine, deriving as it does from the state constitutional limitation on judicial power. Thus, in order properly to come before a judicial body, one must demonstrate the presence of an actual controversy, indicated by real injury. Colo. Const. art. VI, § 1; *Douglas County Board*

*of Commissioners v. Public Utilities Commission, supra; Maurer v. Young Life,* 779 P.2d 1317 (Colo.1989).

■ Furthermore, as to county boards of commissioners, seeking to bring review actions, the doctrine of standing imposes additional limitations. In *Maurer v. Young Life, supra,* 779 P.2d at 1320, the supreme court determined that standing is precluded when: "(1) the agency seeking judicial review is subordinate to the agency whose decision is sought to be reviewed, and (2) no statutory provision confers a right on the subordinate agency to seek judicial review of the superior agency's decision."

We are persuaded that the caveats set forth in *Maurer* do not apply here to deprive BOCC of standing.

■ First, we note that while the General Assembly plainly designated BOCC as the Pueblo County Board of Social Services, for purposes of the administration of county social services functions, §§ 26–1–115 and 26–1–116, C.R.S. (1986 Repl.Vol. 12A), it also recognized the separate capacity of the BOCC to administer the affairs of the county in all respects, including those related to the providing of social services to those in need of them.

The BOCC has *exclusive* authority over all budgetary and financial matters of Pueblo County. *See Beacom v. Board of County Commissioners,* 657 P.2d 440 (Colo.1983). *See* §§ 30–11–107(1)(b) and 30–11–107(2), C.R.S. (1986 Repl.Vol. 12A).

Thus, BOCC, in its capacity exclusively to manage and maintain the financial aspects of all of the county organization of Pueblo County, has standing to initiate this action because, by the Department's actions concerning the Contingency Fund, the Department has adversely affected the county's general financial well-being. Hence, pursuant to § 24–4–102(12), BOCC is seeking judicial review on its own behalf, as distinct from its role as the county board of social services, for an alleged injury it has suffered and is not, here, subordinate to the Department.

The General Assembly has statutorily noted the necessity for this difference in capaci-

ties in the fulfillment of all of the duties of a board of county commissioners. In § 26–1–116(3), C.R.S. (1989 Repl.Vol. 11B), it has commanded that: "The County Board shall perform its public assistance and welfare duties, responsibilities, and activities separate and apart from the duties and responsibilities of the Board of County Commissioners...."

Secondly, we note that in the legislative hearings on Senate Bill 374 that became § 24–4–102(12), the General Assembly specifically noted the necessity to provide legislatively for county boards of commissioners to have standing to challenge state agency actions that have aggrieved their counties beyond the narrow issues of the state agency itself. When introducing Senate Bill 374, Senator Meiklejohn testified:

> The state supreme court has held that a local government—county, school district, municipality, or whatever—is not a person within the meaning of the administrative procedure act, and therefore, has no standing for review.... [I]n an effort to continue to try to find some way that local governments may address themselves for what they believe to be unlawful actions of the state of Colorado and, in my own judgment, are unlawful actions from time to time ... we are introducing in the senate a bill which would permit counties to appeal from decisions of administrative agencies which aggrieved them.

Hearings on S.B. 374 before the Subcommittee of the Senate Judiciary Committee, 52nd General Assembly, First Session (Feb. 21, 1979).

Furthermore, Representative Spano commented that: "Senate Bill 374 gives counties standing to attain judicial review of agency action.... [T]his bill restricts the judicial review to counties." Hearings on S.B. 374 before the Subcommittee of the House Judiciary Committee, 52nd General Assembly, First Session (April 10, 1979). In addition, Representative Spano reiterated the prime reason for Senate Bill 374, stating:

> The Colorado Supreme Court has, on several occasions, stated that the county has no standing in court; the reason for this bill is that if the county is to have standing in court, then it's necessary that the legislature grant such authority.... [I]n the

simplest concept of the bill, it enables a political subdivision, which is a county, by express statutory language, to be considered as a person with standing in court, either as ... [a plaintiff] or the defendant.

Hearings on S.B. 374 before the Subcommittee of the House Judiciary Committee, 52nd General Assembly, First Session (April 10, 1979).

Finally, a former president and then current member of the Executive Committee of the Colorado County Attorneys' Association testified that Senate Bill 374 was in response to several cases such as *Board of County Commissioners v. Love, supra,* and *Martin v. District Court, supra,* wherein a county was found to have no standing to seek judicial review of a state agency action. The member further testified that the bill provided that:

> [Y]ou have to have a cause of action, or be an aggrieved party before you can bring any action under the administrative code, and by adding "county" in this particular section, along with other people ... it would be my position that they are subject to the same requirements of proof of actual injury, or of being aggrieved, at least, before any district court would entertain this action.

Hearings on S.B. 374 before the Subcommittee of the House Judiciary Committee, 52nd General Assembly, First Session (April 10, 1979).

Accordingly, while we recognize that, under certain circumstances, a board of county commissioners may be subordinate to the Department, *see Board of County Commissioners v. Merit System Council, supra,* under the facts of this case, BOCC has statutory authority to seek judicial review of the Department's actions.

The judgment of the trial court is reversed, and the cause is remanded for reinstatement in the trial court and for further proceedings on the merits of the request for review.

CRISWELL and HUME, JJ., concur.