Opinion by CHIEF JUDGE LOEB
¶ 1 Plaintiffs, Anita Moss, Robert Westby, and Colorado Advocates for Public Safety, appeal the district court's order granting the motion to dismiss filed by defendants, the Board of County Commissioners of Boulder County, Colorado (County Board). We affirm in part, reverse in part, and remand with directions.
I. Background and Procedural History
¶ 2 This case concerns a county resolution that prohibits firearm discharges in a designated area of Sugar Loaf Mountain, in unincorporated Boulder County. Moss and Westby live and own property in this area. Colorado Advocates for Public Safety is a nonprofit corporation whose mission is to assist in protecting the public from safety hazards, such as those involving firearms. The dispute between plaintiffs and the County Board in this case centers on two issues: (1) whether the resolution applies to bows and arrows and (2) plaintiffs' request to expand the geographic area covered by the resolution.
¶ 3 The County Board adopted Resolution 80-52 in 1980, in response to a citizen petition. It was authorized by a state statute that allows counties to designate unincorporated areas where "it is unlawful for any person to discharge any firearms" (with certain exceptions for law enforcement and short-range activity on confined parcels), after a public hearing and upon a finding that the area has a certain population density. § 30-15-302, C.R.S. 2014. The statute defines "firearm" as "any pistol, revolver, rifle, or other weapon of any description from which any shot, projectile, or bullet may be discharged." § 30-15-301(1), C.R.S. 2014.
¶ 4 The county began enforcing Resolution 80-52 for the first time in 2011, as a result of advocacy by plaintiffs. However, the Boulder County Sheriff publicly took the position that the resolution did not apply to bows and arrows.
¶ 5 Plaintiffs consistently have taken the position that the statutory definition of "firearm" includes bows and arrows, and, therefore, Resolution 80-52 prohibits bow-and-arrow discharges. In a series of e-mails, letters, and petitions during 2012 and 2013, plaintiffs asked the County Board to provide guidance to the sheriff clarifying that bow-and-arrow discharges are prohibited in the designated area and directing him to enforce the resolution accordingly.
¶ 6 Plaintiffs also requested that the County Board hold a public hearing to consider expanding the geographic area covered by Resolution 80-52 due to population growth in the surrounding area and concerns that the existing boundaries were not easily recognizable on the ground. They proposed a new, larger area with boundaries that followed roads and topographical features.
¶ 7 Although plaintiffs' attorney and a county employee corresponded by e-mail about these matters, the County Board did not formally respond to plaintiffs' requests. The county employee stated that the County Board was reluctant to hold a public hearing on the matters raised by plaintiffs, and no public hearing took place. The County Board did not provide the requested guidance to the sheriff regarding whether bow-and-arrow discharges were prohibited.
*921 ¶ 8 Plaintiffs filed this action against the County Board in late 2013, asserting claims for declaratory and injunctive relief. The first claim sought a declaratory judgment determining that, as a matter of law, Resolution 80-52 applies to bows and arrows. The second claim sought an injunction directing the County Board to "make prompt and appropriate decision-making" on their petitions in accordance with Colorado's Administrative Procedure Act (APA) and constitutional due process.
¶ 9 The County Board moved to dismiss plaintiffs' declaratory judgment claim under C.R.C.P. 12(b)(5) and their injunctive relief claim under C.R.C.P. 12(b)(1).
¶ 10 After briefing, the district court granted the motion to dismiss in a written order. The court dismissed the declaratory judgment claim on the bases that the claim (1) presented a nonjusticiable political question and (2) was inappropriate for declaratory judgment because a judgment would not terminate the controversy. The court expressly declined to address the interpretive issue of whether bows and arrows constitute "firearms" under section 30-15-301 to - 302 and Resolution 80-52. With respect to the injunctive relief claim, the court ruled that it lacked subject matter jurisdiction because the Colorado APA does not apply to the County Board and plaintiffs did not allege a quasi-judicial action by the County Board subject to judicial review. The court further declined to address plaintiffs' constitutional due process arguments on the basis that the claim presented a nonjusticiable political question.
¶ 11 This appeal followed.
II. Declaratory Judgment Claim
¶ 12 Plaintiffs contend that the district court erred in dismissing their declaratory judgment claim. We agree.
¶ 13 We review a district court's ruling on a motion to dismiss under C.R.C.P. 12(b)(5) de novo. Regents of Univ. of Colo. v. Students for Concealed Carry on Campus, LLC, 2012 CO 17, ¶ 11, 271 P.3d 496. We must accept all allegations of material fact as true and view the allegations in the complaint in the light most favorable to the plaintiff. Id.
¶ 14 We first address the district court's bases for granting the C.R.C.P. 12(b)(5) motion to dismiss. We then turn to the merits of plaintiffs' claim.
A. Jurisprudential Issues
¶ 15 The district court focused on two jurisprudential issues in dismissing plaintiffs' declaratory judgment claim: the political question doctrine and whether the claim was appropriate for resolution by a declaratory judgment. We address each in turn.
1. Political Question Doctrine
¶ 16 The political question doctrine recognizes that courts should refrain from deciding certain controversies concerning policy choices that are constitutionally committed for resolution to the legislative or executive branch. Busse v. City of Golden, 73 P.3d 660, 664 (Colo. 2003) ; see also Colo. Common Cause v. Bledsoe, 810 P.2d 201, 205 (Colo. 1991) (listing features that may characterize a case raising a nonjusticiable political question).
¶ 17 In ruling that plaintiffs' declaratory judgment claim presented a nonjusticiable political question, the district court stated:
Plaintiffs request the Court enter declaratory judgment stating that C.R.S. § 30-15-302 requires the County to enforce the firearms discharge ban against bow hunting and to hold a hearing to consider expanding the Resolution area. The County's decision whether to consider these issues or not is a discretionary political question for the Commissioners to decide under longstanding Colorado law.
¶ 18 Plaintiffs contend that the district court's conclusion was based on a mischaracterization of their declaratory judgment claim. We agree. Although plaintiffs originally petitioned the County Board to direct the sheriff to enforce the resolution against bow hunting, their legal claim for a declaratory judgment is more limited. As we read their complaint, plaintiffs merely seek a judicial determination that, as a matter of law, the word "firearm" in sections 30-15-301 to - *922 302 and Resolution 80-52 includes bows and arrows.
¶ 19 Interpreting those provisions in no way infringes on the powers and duties of other branches of government. See Colo. Common Cause, 810 P.2d at 206 ; Grossman v. Dean, 80 P.3d 952, 961 (Colo. App. 2003). Indeed, statutory interpretation is a question of law that is " 'traditionally within the role of the judiciary to resolve.' " Colo. Med. Soc'y v. Hickenlooper, 2012 COA 121, ¶¶ 1516, 353 P.3d 396 (cert. granted Oct. 7, 2013) (quoting Common Cause, 810 P.2d at 206 ); cf. Colo. Gen. Assembly v. Lamm, 704 P.2d 1371, 1378 (Colo. 1985) ("[I]t is peculiarly the province of the judiciary to interpret the constitution and say what the law is." (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) )). Plaintiffs' declaratory judgment claim presents an interpretive issue that is firmly within the province of the judiciary, and resolving it does not require us to make policy choices committed to other branches of government. We therefore conclude that this claim does not raise a nonjusticiable political question.
¶ 20 The district court's reliance on a previous case involving two of the same plaintiffs, Moss v. Members of Colo. Wildlife Comm'n, 250 P.3d 739 (Colo. App. 2010) ( Moss I ), was misplaced. The claims in that case were different than those asserted here, and the Moss I opinion focused exclusively on the plaintiffs' failure to exhaust their administrative remedies. Id. Although the division in Moss I interpreted some language in section 30-15-302 as it related to the exhaustion issue, id. at 743-45, it did not address whether that statute applies to bows and arrows, nor did it discuss the political question doctrine. Thus, nothing in Moss I requires us to conclude that plaintiffs' unrelated declaratory judgment claim in this case presents a nonjusticiable political question.
¶ 21 For these reasons, we conclude that the district court erred in dismissing plaintiffs' declaratory judgment claim based on the political question doctrine.
2. Appropriateness of Declaratory Judgment
¶ 22 We next address the district court's ruling that this claim is not appropriate for a declaratory judgment.
¶ 23 Colorado's Uniform Declaratory Judgments Law provides that "[a]ny person ... whose rights, status, or other legal relations are affected by a statute [or] municipal ordinance ... may have determined any question of construction or validity arising under the ... statute [or] ordinance." § 13-51-106, C.R.S. 2014; accord C.R.C.P. 57(b). However, a court may refuse to enter a declaratory judgment if the judgment "would not terminate the uncertainty or controversy giving rise to the proceeding." § 13-51-110, C.R.S. 2014; accord C.R.C.P. 57(f).
¶ 24 We conclude that this is a classic case appropriate for resolution by entry of a declaratory judgment. The declaratory judgment requested by plaintiffs will resolve the controversy between the parties regarding whether bow-and-arrow discharges are prohibited under the existing resolution, in the area where plaintiffs reside. Although the County Board has never expressly stated its position on this issue, a fair reading of the record indicates that the County Board disagrees with plaintiffs that bow-and-arrow discharges are prohibited. The Sheriff's Office has publicly stated that Resolution 80-52 does not apply to bows and arrows, and the County Board declined to make any statement to the contrary, despite repeated requests by the plaintiffs seeking to clarify the issue. At a minimum, there is uncertainty about whether bow-and-arrow discharges are prohibited under Resolution 80-52. Thus, a declaratory judgment will terminate the controversy or uncertainty regarding the scope of the resolution.
¶ 25 Furthermore, this claim does not merely concern a hypothetical scenario. Plaintiffs allege in their complaint that bow hunting is actually occurring on or near their property, within the area covered by Resolution 80-52. A declaratory judgment in this case will resolve any uncertainty as to whether such activity is prohibited under the resolution.
¶ 26 The County Board's assertion that it has discretion to modify or repeal its own resolution does not make this claim inappropriate *923 for declaratory judgment. Plaintiffs ask the court to construe the language of an existing resolution that has been in effect since 1980. We are not prevented from doing so merely because the resolution (or the controlling statute, for that matter) may be altered at some point in the future. A declaratory judgment will resolve the dispute about what conduct is prohibited under the current legal framework. How the County Board reacts to such a judgment is a matter for another day.[1]
¶ 27 Likewise, law enforcement decisions regarding whether and how to enforce Resolution 80-52 are not before us. As discussed above, plaintiffs' declaratory judgment claim merely seeks a judicial determination that Resolution 80-52 applies to bows and arrows; there is no claim for mandamus requiring enforcement of the resolution. Thus, the court's authority to compel law enforcement action is not at issue in this case.
¶ 28 For these reasons, we conclude that plaintiffs' claim is appropriate for resolution by entry of a declaratory judgment.
¶ 29 Accordingly, plaintiffs' declaratory judgment claim was properly raised in the district court, and the district court erred in declining to address it. On appeal, plaintiffs have again argued the merits of their declaratory judgment claim. Because this claim raises a pure question of law based on statutory interpretation, we resolve it here rather than remand to the district court for resolution. See Munoz v. Indus. Claim Appeals Office, 271 P.3d 547, 550 (Colo. App. 2011).
B. Merits
¶ 30 Plaintiffs contend that the word "firearm" in Resolution 80-52, as defined by section 30-15-301(1), includes bows and arrows. We agree.
¶ 31 Statutory interpretation is a question of law that we review de novo. Klinger v. Adams Cnty. Sch. Dist. No. 50, 130 P.3d 1027, 1031 (Colo. 2006). Our task is to give effect to the intent of the General Assembly. Id. To do so, we look first to the language of the statute. Id. We construe words and phrases according to their commonly accepted and understood meaning. A.S. v. People, 2013 CO 63, ¶ 10, 312 P.3d 168. The General Assembly may furnish its own definitions of words and phrases in order to guide and direct judicial determination of the intent of the legislation although such definitions may differ from ordinary usage. People v. Swain, 959 P.2d 426, 429 (Colo. 1998). If, as here, the General Assembly has defined a statutory term, a court must apply that definition. Id. However, Colorado courts often look to dictionaries to interpret terms that are not defined in the statute. Triple Crown at Observatory Vill. Ass'n v. Vill. Homes of Colo., Inc., 2013 COA 150M, ¶ 23, 328 P.3d 275. Where the language is clear and unambiguous, we do not resort to other rules of statutory construction. Klinger, 130 P.3d at 1031.
¶ 32 Here, the statute that authorizes counties to prohibit firearm discharges expressly defines "firearm" or "firearms" as "any pistol, revolver, rifle, or other weapon of any description from which any shot, projectile, or bullet may be discharged." § 30-15-301(1). The two words critical to our analysis are "weapon" and "projectile." Neither word is defined in the statute.
¶ 33 We agree with plaintiffs that an arrow is a "projectile" as that word is commonly understood. Webster's Dictionary defines "projectile" as "a body projected by external force and continuing in motion by its own inertia; ... a missile for a firearm, cannon, or other weapon." Webster's Third New International Dictionary Unabridged 1813 (2002). An arrow shot from a bow clearly meets this definition. Indeed, Webster's Dictionary specifically lists an arrowhead as an example of a "projectile point." Id.
¶ 34 Likewise, there can be no doubt that a bow of the type used for bow hunting is a "weapon" as that word is commonly used. Webster's Dictionary defines "bow" as "a weapon made of a strip of wood, metal, or other flexible material with a cord that connects the two ends so as to hold the strip bent in an arc under tension and used to propel an arrow."Id. at 261 (emphasis added). We also find it instructive that the *924 statutory definition at issue here includes the words "other weapon of any description." This broad language clearly does not limit the statute's definition of "firearm" to weapons that could be classified as guns.[2]
¶ 35 Accordingly, under the plain language of section 30-15-301(1), a bow is a weapon from which a projectile (namely, an arrow) may be discharged. We therefore conclude that a bow and arrow constitute a "firearm" as defined in section 30-15-301(1).
¶ 36 We perceive no reason why the word "firearm" in Resolution 80-52 should be interpreted differently. Section 30-15-302 allows a board of county commissioners to designate unincorporated areas "in which it is unlawful for any person to discharge any firearms," with certain exceptions not relevant here. Resolution 80-52 was adopted pursuant to this statute and tracks its language, stating that "it shall be unlawful for any person to discharge any firearms" in the designated area, subject to the exceptions listed in the statute. The resolution does not provide a separate definition for "firearm," nor does it state any exemption for bows and arrows. We therefore conclude that Resolution 80-52 applies to any firearm that falls within the statutory definition, including bows and arrows.
¶ 37 Accordingly, we hold, as a matter of law, that Resolution 80-52 prohibits discharging bows and arrows within the designated area, subject to the listed exceptions.
¶ 38 In so holding, we do not address whether the County Board has authority to modify or repeal this resolution, nor do we address law enforcement's obligation (if any) to enforce it. If a justiciable dispute over such issues arises in the future, it may be addressed in separate litigation at that time.
¶ 39 For the reasons set forth above, we reverse the district court's dismissal of plaintiffs' declaratory judgment claim and remand for entry of a declaratory judgment in favor of plaintiffs stating that bows and arrows are "firearms" under sections 30-15-301 and - 302 and Resolution 80-52.
III. Injunctive Relief Claim
¶ 40 We next address plaintiffs' claim for injunctive relief under the Colorado APA and constitutional due process principles. For the reasons set forth below, we affirm the district court's dismissal of this claim.
¶ 41 We apply a mixed standard of review to motions to dismiss for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1). Levine v. Katz, 192 P.3d 1008, 1012 (Colo. App. 2006). We review the district court's factual findings for clear error and legal conclusions de novo. Id.
¶ 42 As noted above, we review a ruling on a motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5) de novo. Students for Concealed Carry on Campus, ¶ 11. We accept all allegations of material fact as true and view them in the light most favorable to the plaintiff. Id.
¶ 43 In the second claim for relief in their complaint, plaintiffs sought an order directing the County Board to "make prompt and appropriate decision-making on Plaintiffs' petitions," which addressed two issues: (1) whether Resolution 80-52 covers bows and arrows and (2) expansion of the geographic area covered by Resolution 80-52. Because we have determined that Resolution 8052 does cover bows and arrows, plaintiffs' injunctive relief claim is moot with respect to that issue. See Grossman, 80 P.3d at 960 ("An issue becomes moot when the relief granted by the court would not have a practical effect upon an existing controversy."). Thus, we address this claim only as it relates to plaintiffs' petition to expand the designated geographic area.
¶ 44 The district court ruled that it lacked subject matter jurisdiction over this claim on the grounds that (1) the Colorado APA does not apply to the County Board and (2) plaintiffs did not allege a quasi-judicial agency action subject to judicial review. The court *925 then declined to address plaintiffs' constitutional due process arguments on the basis that the claim presented a political question. We address each of these issues in turn.
A. Colorado APA
¶ 45 We conclude that the district court correctly ruled that the Colorado APA does not apply to the County Board.
¶ 46 As relevant here, the Colorado APA applies to "every agency of the state having statewide territorial jurisdiction" and "every other agency to which it is made to apply by specific statutory reference." § 24-4-107, C.R.S. 2014.
¶ 47 It is undisputed that the County Board does not have statewide territorial jurisdiction, and plaintiffs have not cited any statute explicitly stating that APA requirements apply to the County Board.
¶ 48 Plaintiffs contend, however, that the APA is made applicable here by section 24-4-105(2)(a) of that statute, which provides: "In any [adjudicatory] proceeding in which an opportunity for agency adjudicatory hearing is required under the state constitution or by this or any other statute, the parties are entitled to a hearing and decision in conformity with this section." § 24-4-105(2)(a), C.R.S. 2014 (emphasis added). Plaintiffs argue that, because the firearm discharge statute includes a public hearing requirement, the procedures set forth in section 24-4-105 of the APA apply here. We disagree.
¶ 49 Section 30-15-302(2) states that before a board of county commissioners designates an area where firearm discharge is prohibited, the board must hold a public hearing at which interested persons have an opportunity to be heard.
¶ 50 Here, plaintiffs do not allege that the County Board has designated an area under that statute without first holding a public hearing. Rather, they allege that the County Board has failed to act on their petition requesting expansion of the existing area. As the district court noted in its order, the statute does not specify any procedures that must be followed upon receipt of a citizen petition; indeed, it does not mention petitions at all. We therefore conclude that section 30-15-302 does not subject the County Board to any procedural requirements under the circumstances alleged, much less those of the APA.
¶ 51 Plaintiffs' reliance on Board of County Commissioners v. Love, 172 Colo. 121, 470 P.2d 861 (1970), superseded by statute as stated in Board of County Commissioners v. Romer, 931 P.2d 504 (Colo. App. 1996), for the proposition that the County Board is an agency subject to APA requirements is misplaced. That case considered whether a board of county commissioners had standing to sue another agency under the Administrative Code, a precursor to the APA. Id. at 126, 470 P.2d at 863. The supreme court held that the board was an "agency" rather than a "person" under that statute, and, therefore, did not have standing. Id. The court did not consider whether the board itself was subject to the procedural requirements of the statute. Moreover, that case does not control our analysis under the current version of the APA.
¶ 52 For these reasons, we conclude that the County Board is not subject to APA requirements under the circumstances of this case.
B. Quasi-Judicial Action
¶ 53 We also perceive no error in the district court's ruling that plaintiffs did not allege a quasi-judicial action subject to judicial review. In their complaint, plaintiffs allege that the County Board has "failed to commit to any action or hearing with regard to the Plaintiffs' and other residents' request to expand and render more visible the 80-52 boundaries." Thus, according to plaintiffs' own allegations, the County Board has taken no action, let alone quasi-judicial action, with respect to the expansion issue.
¶ 54 Moreover, as the district court noted, review of any quasi-judicial action would ordinarily be sought pursuant to C.R.C.P. 106(a)(4), not the APA. See C.R.C.P. 106(a)(4) (providing a judicial remedy "[w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction *926 or abused its discretion"). Plaintiffs concede that they have not asserted and cannot assert a claim under C.R.C.P. 106(a)(4) because there has been no final agency action in this case.
¶ 55 Therefore, we discern no error in the district court's ruling that plaintiffs failed to allege a quasi-judicial action subject to judicial review.
C. Constitutional Due Process
¶ 56 Plaintiffs finally contend that they are entitled to a hearing and final decision-making on their petition to expand the designated geographic area under general constitutional due process principles. We conclude that plaintiffs have failed to state a constitutional due process claim upon which relief can be granted. See C.R.C.P. 12(b)(5).
¶ 57 Under the Fourteenth Amendment to the United States Constitution, a state may not deprive any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. As an initial matter, we agree with plaintiffs that the County Board is a government entity subject to due process requirements under the Fourteenth Amendment.
¶ 58 However, plaintiffs have not cited any authority supporting their theory that the County Board's failure to act on a citizen petition implicates due process. Plaintiffs have not explained how the alleged delay here constitutes a deprivation of a protected property interest, nor have they provided any case law that would support that argument. Their complaint does not indicate whether the County Board has rules or regulations for processing citizen petitions, or whether those rules were violated. Absent a violation of specific rules, plaintiffs have not explained how constitutional due process principles obligate the County Board to take action under the circumstances alleged. In sum, plaintiffs have identified no basis for us to conclude that their allegations, if proven, would entitle them to the relief sought in this claim.
¶ 59 For these reasons, we affirm the district court's dismissal of plaintiffs' claim for injunctive relief, albeit on different grounds. See C.R.C.P. 12(b)(5) ; Premier Members Fed. Credit Union v. Block, 2013 COA 128, ¶ 9, 312 P.3d 276 ("We may affirm a trial court's ruling on any ground that is supported by the record.").
IV. Conclusion
¶ 60 The order is affirmed as to the injunctive relief claim, reversed as to the declaratory judgment claim, and the case is remanded for entry of a declaratory judgment in favor of plaintiffs consistent with this opinion.
Sternberg* and Kapelke*, JJ., concur.

Accordingly, we do not address whether and to what extent the County Board has the authority to modify or repeal Resolution 8052, or what procedures it must follow in order to do so.

In that regard, we note that the dictionary definition of "firearm" is limited to "a weapon from which a shot is discharged by gunpowder." Webster's Third New International Dictionary Unabridged 854 (2002). However, we are bound by the broader statutory definition, see People v. Swain, 959 P.2d 426, 429 (Colo. 1998), and we are not at liberty to add such limiting language where the General Assembly chose not to do so.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2014.